In the Matter of the Estate of GENEVIEVE B. TRACY, Deceased.

Surrogate's Court, Richmond County, May 25, 1932.

APPLIICATION for probate and construction of will.

*Ernest T. Lindemann,* for the petitioner.

*Edward M. Seguine,* special guardian.

SMITH, S. The decedent was a school teacher and prepared her own will and a codicil thereto, on a printed blank, and it would seem from a perusal of the instruments that she was a woman of intelligence and knew what she wanted done with her property after her death. The will bears date September 28, 1919, and the codicil bears date May 27, 1930. Neither the will nor the codicil names an executor or trustee.

The decedent died on December 28, 1931. She left her surviving her husband and one minor child, who has no guardian. The petition for the probate was made by the husband.

The special guardian's report calls attention to the fact that the husband is the proponent although not a legatee or an executor or a person interested in the will.

Section 139 of the Surrogate's Court Act, which designates the persons who may propound a will, does not specifically name a husband, but states that a petition may be presented by " any other person interested in the estate."

Section 314, subdivision 11, defines the phrase " persons interested," where it is used in connection with an estate or fund, to include every person entitled, either absolutely or contingently,

to share in the estate or the proceeds thereof, or in the fund, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee or otherwise, except as a creditor. Certainly the husband would be a person interested in both the real and personal estate, in the absence of a will, and in *Donlon* v. *Kimball* (61 App. Div. 31, 33) the court said: "Doubtless under the language of the present, as under that of the former statute, the rule obtains that any interest or the bare possibility of interest is sufficient to entitle one to be a party to the proceeding." And Mr. Surrogate WINGATE, in *Matter of Meiselman* (138 Misc. 104, 107), recites the opinion in *Matter of Lasak* (131 N. Y. 624) that a proceeding for probate is one *in rem* in which all of the parties could become active. From which it would follow that any party interested in the *rem* should be permitted to initiate the proceedings to bring it within the jurisdiction of the court. And in *Matter of Yung* (216 App. Div. 595, 597), in relation to who would be a person claiming to be interested in the estate of a decedent, although the matter is one in connection with section 137 of said act, and not in relation to section 139, it was held that a person not interested under a will, but who would be in the case of an intestacy, would be a person interested.

I accordingly find that the petition for probate is properly initiated.

The said special guardian likewise calls attention to the fact that the proponent of the will, although not a legatee, or an executor, or a person interested in the will, requests a construction of the will.

Section 145 of the Surrogate's Court Act, among other things, states in the third paragraph: "If a party expressly puts in issue in a proceeding for the probate of a will the validity, construction or effect of any disposition of property, contained in such will, the surrogate may determine the question, upon rendering a decree, * * *."

Thus the word "party" in said section undoubtedly refers to a party to the proceeding, and not to a person interested under the will.

I concede that the proponent could not initiate a separate proceeding for a judicial construction, but what is the object of permitting a party to initiate a proceeding for probate and not, at the same time, to permit a construction of the will which might result in a denial of probate. Undoubtedly, the Legislature intended to discriminate between the words "person" and "party," the word "person" (person interested in the result) applying to a proceeding for a judicial construction, and the word "party" meaning party to the proceeding, who by requesting a construction in his pleading for probate, even if the construction did not result in a denial of

probate, would facilitate, as in the present matter, the work of the administrator with the will annexed, to be appointed, in his management of the estate and procure a determination in one proceeding that would otherwise require two. There are numerous decisions holding that only those interested could bring a proceeding for construction, but all relate to a separate proceeding for that purpose. A question of this kind could rarely be raised, for a like situation would not occur once in a generation.

The special guardian also calls attention to the fact that the codicil to the will is inserted in a blank space, which was left in the middle of the will, and is dated over ten years after the making of the will. The will, eliminating the codicil, was properly signed at the end, executed and witnessed. The codicil, evidently to have the two instruments on one paper, and thus prevent them from being separated, and not both found after decedent's death, was written on the front page of the will, below the second clause, but as the codicil cannot be deemed to be an alteration to the will, or to affect the validity thereof, and as both instruments are properly signed, the codicil can be considered to be no part of the written will, and to be only an adjunct thereto made after the execution of the will, and to be only a continuation of the testamentary disposition of the decedent's property. It was held in *Matter of Jacobson* (6 Dem. 298) that the validity of a will is not destroyed by the addition of a clause appointing an executor after the signature of a testator, provided such addition was made after execution.

It is an unusual situation, but I find that neither instrument avoids the other, and both are valid and entitled to probate as a will.

After this long preliminary, taking up the construction of the second clause of the will, which reads as follows: " *Second.* I desire to set aside fifty dollars, $50.00, the interest on which is to be used to care for the lots in the Scott Cemetery in which my parents are buried. I also wish the sum of One hundred dollars set aside, the interest on which is to be used to care for the cemetery in which I am buried. I also wish the sum of Three hundred dollars, or a larger amount if necessary, set aside, to buy a monument. To my only daughter, Miriam Genevieve Tracy, I leave the use of every thing I possess. If at any time this sum is not sufficient for her support or education she shall be allowed to use as much of the principal as is necessary. At her death I desire all that remains of this property to be divided between or among her children if she leaves any. In case she dies without heirs, I desire that it shall be divided equally between the Home for Aged Women in Homer, N. Y., and the Cortland Hospital in Cortland, N. Y. I request

that all my clothing which my daughter can not use be given away to my friends and the poor."

There are three questions therein to be determined, viz.:

1. When the decedent used the expression " set aside " in the first two places, did she mean that the principal was to be paid over or used for a particular purpose, or did she intend that the sum mentioned should be invested by a trustee to be appointed by the court?

2. Are the expressions, " To my only daughter Miriam Genevieve Tracy I leave the use of every thing I possess," and " If at any time this sum is not sufficient for her support or education she shall be allowed to use as much of the principal as is necessary," to be construed as an absolute gift to the daughter of the residuary estate, or should they be construed as a gift to the daughter during her life with power to invade the principal, with remainder to the children or descendants of said daughter, and in the event of the daughter dying without descendants, should such remainder go to the charitable legatees named in the will?

3. By the use of the word " children " did the decedent mean descendants of children? And by the use of the word " heirs " in said paragraph, was the word used in its natural ordinary meaning?

As hereinbefore stated, both the will and the codicil were drawn by a layman, and it behooves me to construe said instruments as a layman would construe them. (*Matter of McQueen*, 99 Misc. 185.)

As to the first question in the will, as to the meaning of the words " set aside," as used in the bequest of two certain sums, the interest from which to be used for the care of cemetery lots, it is a fact that in practically every cemetery a certain sum is required to be paid to the cemetery to insure what is commonly called " perpetual care." Seldom are such moneys held by a trustee, and section 91 of the Membership Corporations Law and section 13 of the Personal Property Law provide for the disposition of moneys left for care of cemetery lots.

I accordingly find that it was the intention of the decedent that the sum of $50 be paid to the Scott Cemetery, in which the parents of decedent are buried, the interest to be used for the " perpetual care " of said burial lots; and that likewise the sum of $100 be paid to the cemetery in which the decedent is buried, the interest to be used for the " perpetual care " of said burial lot. Should either of said cemeteries be unincorporated then such funds are to be held, for the purpose mentioned, by the trustee to be appointed by this court in the matter of this estate.

As to the second question, as to the interest which Miriam Gene-

vieve Tracy, the daughter of the decedent, has under said will, I find that the gift to said daughter is limited to the use thereof by the daughter during her life, with power to invade the principal, with remainder to the children or descendants of said daughter, and in the event of the daughter dying without descendants, said remainder to go to the charitable organizations named in said will. This is in accord with the decisions in *Terry* v. *Wiggins* (47 N. Y. 512, 516) and *Matter of Ithaca Trust Company* (220 id. 437). Otherwise, said decedent, in such event, would die intestate as to such remainder, as I find that the decedent did not intend that the remainder should pass beyond descendants of her daughter.

As to the third question, by the use of the word " children " did decedent mean descendants of children, I decide that the word " children " would include grandchildren (*Holbrook* v. *Shepard*, 220 App. Div. 64), and I find that the word " heirs " in said paragraph was not used in its natural ordinary meaning, as a contrary intention appears by the gift of the estate to certain charitable organizations, upon the death of the daughter of decedent without children her surviving. I accordingly find that the word " heirs," as used in said will, means children or descendants.

Next, taking up the construction of the codicil, which reads as follows:

" Codicil I                                          *May* 27, 1930.

" My object in making this will is to secure for my daughter an annual income but to prevent a waste of property. All real estate or personal property may be sold by order of the Courts and the money invested in such securities as the courts deem advisable. I prefer to have this property handled by a trust company, to be selected by the proper authorities."

There are four questions therein to be determined, viz.:

1. Did the decedent intend to deprive her daughter of the right to invade the principal of the estate?

2. Did she intend that no property should be sold without the direction of the court?

3. Did she intend that the court must direct as to the investment of the moneys of the estate?

4. Did she intend to create a trust and name a trust company as trustee?

As to the first question: There is nothing that indicates any curtailment of the right of the daughter to use such part of the principal of the estate for her support and education as is necessary. (*Matter of Weiss*, 124 Misc. 413.)

As to the second question: The decedent, being a woman of considerable intelligence and desiring that her property should not

be, as stated, "wasted," undoubtedly considered that a trust company, acting as a trustee, would take better care of her estate than her daughter, who might not have the business experience necessary to properly look after the management thereof, and that the trust company would take the initiative and apply to the court for leave to sell the real property, and such personal property as might not be negotiable, which I find by said clause she authorized to be sold when necessary, but only upon application to the proper court. Such sale could be made under the court's direction under section 215 of the Surrogate's Court Act.

As to the third question: I find that if said decedent so intended it was unnecessary as the law provides as to what investments trustees may make, and the court cannot direct investments to be made in securities not named therein.

As to the fourth question: I find that the intention of the decedent was to create a trust for the benefit of her daughter and to have the court designate the trustee, and that no part of the principal can be invaded by the daughter without the approval of the court of the necessity thereof.

Pursuant to the request contained in the petition, I appoint Howard M. Tracy to be the administrator with the will annexed of the will of said Genevieve B. Tracy, deceased, upon giving a surety bond in the penalty of the value of the personal estate, and eighteen months' net income from the real estate, amount to be fixed from an inventory of the same to be furnished by the petitioner, and I appoint the Staten Island National Bank and Trust Company as the trustee of the trusts created by said will.

Prepare decree admitting will to probate and construing will as found herein. Allowances will be made to the attorney for the petitioner and special guardian and inserted in said decree.