In the Matter of the Estate of YETTA TANKELOWITZ, Also Known as YETTA HEPNER, Deceased.

Surrogate's Court, Kings County, March 5, 1937.

*William Lieberman,* for Jacob Hepner, sole legatee and executor named in the will.

*Harry H. Benjamin,* for Isidore Tankelowitz, husband of deceased and petitioner for probate.

WINGATE, S. In its initial presentation, this proceeding produces a sense of unreality and topsy-turvyness more appropriate to an environment of mad hatters and March hares than to one peopled by contending litigants and striving attorneys.

The propounded instrument purports to have been executed by the decedent on October 7, 1922, and by its terms gives all her assets to Jacob Hepner, who is said to be her stepbrother. Except for appointing him executor, it makes no other direction or provision whatsoever.

The nominated executor and purported sole legatee has not propounded the instrument, but, on the contrary, is earnestly opposing its probate. The surviving spouse of the decedent on the other hand, who is not mentioned in the document, is insisting that it should be probated and letters testamentary issued thereunder.

The answer of the contesting nominated executor bases his opposition to probate on three grounds, namely, *first,* the marital status of the husband and wife as disclosed by a separation agreement between them dated August 10, 1931; *second,* on the husband's alleged abandonment of and failure to support the decedent, and *third,* on the asserted futility of the proceeding, it being asserted that the decedent left no property whatsoever, and that her only asset was a savings bank account standing in her name " in trust " for the contesting executor-sole legatee which presumably devolved directly to him under the rules in *Matter of Totten* (179 N. Y. 112), and has been reduced to possession by him in his individual capacity.

The last objection is patently an insufficient ground for a denial of probate. In such a proceeding the court is unconcerned with the effect of the document either concretely or in the abstract. It may be that not even a cent will devolve as a result of its terms, yet in spite of this, the instrument must be admitted to probate if executed in accordance with section 21 of the Decedent Estate Law by a competent testator acting in pursuance of his own volition. (Surr. Ct. Act, § 144; *Matter of Higgins,* 264 N. Y. 226, 229;

*Matter of Davis*, 182 id. 468, 475; *Matter of Hermann*, 178 App. Div. 182, 191; affd., 222 N. Y. 564; *Matter of Lally*, 210 App. Div. 757, 760, 761.)

The first and second objections, whereas differently phrased, in reality attack the status of the widower as a person, within the description of section 139 of the Surrogate's Court Act, permitted to propound the instrument. In addition to the individuals particularly enumerated in the section, that right is accorded to " any other person interested in the estate," which has been determined to include all individuals who might receive any portion of its avails, if any, either under the will or in the event that the instrument in question were determined to be wholly or partially invalid. (*Wager* v. *Wager*, 89 N. Y. 161, 166; *Thomas* v. *Thomas*, 9 App. Div. 487, 489; *Matter of Yung*, 216 id. 595, 597; *Snow* v. *Hamilton*, 90 Hun, 157, 161; *Matter of Tracy*, 143 Misc. 800, 802; *Matter of Bogstrand*, 149 id. 356, 357; *Matter of Seppala*, Id. 479, 480.)

The inquiry thereupon narrows itself to one of whether the proponent-husband complies with the description of one who may be entitled to receive a portion of any assets which may have belonged to the decedent at the moment of her death. In this connection, it should be noted that his position is not that which is occasionally encountered in the case of a proponent who is not mentioned in the will, of a presentation of the document merely for the purpose of obtaining an adjudication of its invalidity. On the contrary, he insists that it should be admitted to probate. Obviously, he possesses no potential elective rights to take in contravention of the terms of the instrument, since it was executed in 1922, and that statute applies only to wills executed after August 31, 1930.

In support of the position that the husband possesses no interest, his opponent alleges that on August 10, 1931, he and the decedent entered into a separation agreement by the terms of which the husband surrendered to the decedent certain specified property rights, which were given to and accepted by her in lieu and in satisfaction of all claims for support either past, present or future and that the parties agreed thereafter to live separate and apart.

Since the separation was pursuant to the consent of the decedent and she accepted a lump sum payment of all obligations for support, it follows that the widower does not come within the description of subdivision (c) of section 87 of the Decedent Estate Law as " a husband who has neglected or refused to provide for his wife, or has abandoned her." (*Matter of Sitkin*, 151 Misc. 448, 452; *Matter of Sachs*, 155 id. 233, 234.)

It follows further that if, as alleged in the answer, the petitioner abandoned and failed to support the decedent for some period prior

to the date of execution of this contract such offenses were in effect condoned by the consummation of the separation agreement by the parties and such abandonment and failure to support were not existing conditions of which the decedent or her representatives could avail themselves at the time of the death, since the status and relations at that time in force had been brought about by their mutual agreement which modified the previously existing marital status and obligations.

. The main reliance of the objector is placed on the final clause of paragraph " 1 " of the separation agreement which provides that " each may dispose of his or her property in any way deemed fit."

It may readily be admitted that this clause gave to both of the contracting parties freedom of *action* in respect to disposal of their respective assets. Any will thereafter made or any other overt act of disposal would be binding upon and invulnerable against attack by the other. However, the language employed, being in derogation of the existing rights of the other, should not be extended beyond its fair intendment and connotation. That which was made immune from attack was *action*. There was no covenant against claim for or receipt of that which might become due by reason of the natural operation of law so long as no affirmative subsequent act of the owner of the property in question was involved. The authority thereby accorded was analogous to a power to consume granted to the life tenant of a trust. In so far as the authority is exercised, it is not open to question, but in so far as unexercised it is nugatory. (*Matter of Ithaca Trust Co.*, 220 N. Y. 437, 442; *Matter of Shelly*, 159 Misc. 23, 25.)

Accordingly, if the decedent had made the present will subsequent to the date of the agreement, the terms of the latter would have been sufficient to validate it and effectively cut off any rights of the surviving spouse. This, however, did not occur. The will was executed well over four years prior to the intermarriage of the parties which is stated to have been solemnized on January 26, 1927.

At the time of such marriage, section 35 of the Decedent Estate Law provided: " Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would

have been, if such will had not been made. No evidence to rebut such presumption of revocation shall be received, except as herein provided."

Obviously, none of the excepting conditions specified in the statute is here present. The proponent is neither mentioned nor provided for in the will, and there is no pretense that any settlement, which in this connection means an antenuptial settlement (*Matter of Snopek*, 249 App. Div. 396), was effected. It follows, therefore, that at the time of the agreement there was a tentative *pro tanto* revocation of this antenuptial will as to the husband.

Whether or not this tentative revocation would become absolute would depend on the law on the subject existing at the date of death of the testatrix. (*Matter of Holmes*, 147 Misc. 394, 397, and authorities cited.) This occurred on June 15, 1935, at which time section 35 of the Decedent Estate Law, although several times amended in the interval, was substantially the same for present purposes as it was at the time the marriage occurred.

The vital consideration, however, is that no action was taken by the decedent subsequent to the date of the separation agreement addressed to the disposal of her property which under the law then and subsequently existing had not been effectively directed. The grant of an authority to perform an overt act terminating existing rights may not be metamorphosed into a release of such rights in the absence of the performance of the act prescribed as the condition for their termination.

It follows from the foregoing that the proponent is presumptively entitled to receive from the estate a sum equivalent to the distributive share which he would have received had no will ever been executed and that he is consequently a " person interested in the estate " within the connotation of section 139 of the Surrogate's Court Act, and authorized to propound the instrument.

The objections are accordingly overruled, with costs, and the matter may be brought on in usual course for proof of compliance with the provisions of section 21 of the Decedent Estate Law.

Proceed in conformity herewith.