**A. T. MORTON et al., Appellants,**

v.

**Rev. W. S. JONES et al., Appellees.**

Court of Appeals of Kentucky.

June 8, 1962.

Miller, Griffin, Marks & Stephens, Robert F. Stephens, Lexington, for appellants.

Wheeler B. Boone, Lexington, for appellees.

MOREMEN, Judge.

This appeal presents the problem of the interpretation of a holographic will and, specifically, whether the will devised a fee simple title to certain real estate.

The real property consisted of a house within the city limits of Lexington and a forty-four acre tract of Fayette County farm land which apparently had been divided into two tracts. One of the tracts was a small one with a house, and this lot adjoined the larger tract.

The appellants are collateral heirs at law of the decedent and appellees are those who claim a devise of fee simple title under the will.

Mary Talbert Black executed the will on July 15, 1956. She died in October of 1957, and her will was admitted to probate. By declaratory judgment the court decided that the fee of the real property vested in the appellees subject to two life estates which we will discuss later.

Before quoting from the will those specific sections which gave rise to this law suit, it is proper to observe that the will generally disclosed that testatrix knew exactly the nature and extent of her property and the persons who were the natural objects of her bounty. The language is not always in formal legal words, but in most instances fairly conveys exact meaning. To practically all of her heirs at law (under the statutes) she made specific bequests ranging from one dollar to one hundred dollars. The portions of the will which have given the litigants particular concern are Items II, III and a portion of Item IV. These read:

## ITEM II

"My Farm located on the Bryant Road Fayette County and my house located at 643 North Upper Street Lexington, Kentucky are to be occupied or rented for (10) Ten years. My sister Maggie can have the house to live in for her life time now since the blind can live in a home, then it is sold or rented at her death. *The property divided as the other.* Should there be any debt on the place. Let the rent pay it. After that the rent is to be divided once every year with the following persons: James H. Morton ½ Maggie Talbert does not get any of the rent if she lives in the house on North Upper Street Rev. W. A. Jones, ⅙ Pleasant Green Baptist ⅙ Church."

## ITEM III

"I give and bequeath to Arthur Morgan the farm tools he is now useing and $100.00 One Hundred dollars cash the House where he now lives to him for his life time and the lot where the house stands. After his death, the house and lot will be rented with the other property.

"Arthur Morgan not mortgage the house. Just his family (one family)

"He can rent the Farm on Shares as he now has it."

## ITEM IV

"Maggie Talbert my sister, may have anything in either house that she wants.

"I give $75.00 Seventy five dollars each year for keeping up all the graves.

"There is ⅙ I did not give in order that I may need another stone."

We have emphasized the words, "The property divided as the other" because they are the gravamen of this case It will be

noted that in the first sentence testatrix describes her two pieces of property, viz.: the farm and the Lexington house. In that section she does not recognize the subdivision of the farm land and the lot upon which the house stands. That is done under Item III and it seems there was in fact no actual subdivision of the farm property. The terms, "the house and lot" and "the farm" are used as a method of handy description.

It is remarked that after describing her property in one sentence she grants a life estate in the next sentence. The following sentence contains the cryptic devise, "The property divided as the other."

Generally the word "other" means "being the one of two (or more) distinct from the one already mentioned or understood." Here the word is used conversely because "the other" had not been previously mentioned, but "the other" does follow immediately so we have no difficulty in believing the testatrix meant that she had made two divisions of the property, the real estate and the rent, and, when she designated one of the divisions, the fact that "the other" follows rather than precedes, has no significance to us because both divisions were made under the same items. Under the same item she divides the rent for a period of ten years between the three appellees and reserves one sixth for a purpose which we think the court properly held created a trust to supply a necessary stone for the grave and similar purposes.

No party to this litigation is claiming that the will, because of uncertainty or of obscurity in the meaning of any of its terms, is invalid. Appellants contend solely that the will does not convey a fee simple title principally because no formal legal words of devise of the fee simple title were employed nor were any of the requisite words of purchase or limitation.

■ We must assume the attitude suggested in Jennings v. Jennings, 299 Ky. 779, 187 S.W.2d 459, where we said:

"We bear in mind that this will was composed and written by laymen. It has been said that a will drawn by a layman must be construed as a layman would construe it. In re Tracy's Estate, 143 Misc. 800, 258 N.Y.S. 657. At least the court will regard the language of the will as used in its popular rather than in its technical meaning. Page on Wills, Secs. 921, 1009."

■ We find no difficulty in concluding that when either a layman or a lawyer speaks of dividing property without any further limitation as to the nature of the grant, a division of full ownership is intended. Here, of course, the division was subject to two life estates. In Carpenter v. Wells' Adm'r, Ky., 272 S.W.2d 659, it is said:

"That in cases of doubt and where the employed language may be interpreted so as to create intestacy as to a part of the estate, or may appropriately be construed as disposing of all of it, the latter interpretation will be adopted, upon the ground that it is presumed that, when the testator goes through the formality of executing his will, he thereby intends to make a complete disposition of his property and to die intestate as to none of it."

In Pimpel v. Pimpel, Ky., 253 S.W.2d 613, 35 A.L.R.2d 1092, we held that the presumption cannot be applied to supply a disposition which was not made or intended, but that condition does not exist here. It seems plain to us that the testatrix intended to dispose of her property in the manner indicated by the judgment of the circuit court.

The judgment is affirmed.