George W. Marthen, J.
This is a landmark ease in the history of the Surrogate’s Court of the County of Hamilton. The questions involved are enough to curl a country Judge’s hair.
Three petitions have been filed in connection with this estate. One, a petition for probate, filed by Lewis P. X. Gotignola, propounded an instrument purporting to be the last will and testament of the decedent. Another petition was filed by one William Wells, a brother of the decedent, seeking letters of *622 administration. And, finally, a petition by Louise Lieber as the common-law wife of the decedent, also seeking letters of administration. Cross answers objecting on various grounds were filed by the respective parties to the petitions of the others.
The decedent was formerly married to one Selma- Watts who predeceased him by some 11% years. Subsequent to the death of Selma, the decedent and Louise Lieber lived together [in Florida] in a “ common law ’ ’ relationship. There were no children born of either marriage.
On the 31st day of May, 1967, this court granted to petitioner proponent, Lewis F. X. Cotignola, preliminary letters testamentary pursuant to section 153-a of the Surrogate’s Court Act. Thereafter, by order of this court made and entered the 23rd day of June, 1967, the status of the petitioner objectant, Louise Lieber, as the purported common-law widow of the decedent, was directed to be preliminarily determined. After a trial without a jury, Hon. James D. Cubby, then Surrogate of Hamilton County, determined that said Louise Lieber was not the widow of the decedent and dismissed her petition for letters of administration and her answer and objections, and, upon consent of the attorneys for the respective parties, stayed all further proceedings pending the determination of an appeal from that order.
Thereafter, the Appellate Division by order dated and entered December 4,1970, reversed (Matter of Watts, 35 A D 2d 877) the Surrogate’s decree in all respects on the law and the facts, and remanded the matter to this court for further proceedings not inconsistent with the Appellate Division decision.
An appeal, thereafter, to the Court of Appeals, was dismissed (Matter of Watts, 29 N Y 2d 952) on the 14th day of January, 1972, upon the ground that the order appealed from did not finally determine the proceeding within the meaning of the Constitution.
Following remittitur, this court tried, without a jury, the issue of regularity of execution of the instrument propounded as the last will and testament of Amandus Watts, deceased.
At the outset of such trial, it was disclosed by the attorney for the proponent that a subscribing witness to the propounded instrument, one Helen Winters, who had been subpoenaed to testify, had claimed illness which prevented her from attending. At this point, respective counsel stipulated that were said Helen Winters to have appeared and testified, there would have been no change from her testimony as taken in a pretrial examifiation conducted with counsel for both sides present and pages 3 to 8, inclusive, of such examination, were made a part of the *623 record. At that examination, Mrs. Winters testified that she remembered that Mr. and Mrs. Watts had asked her to be a witness to their will and stated that the signature appearing upon the paper, propounded herein as the decedent’s will, appeared to be hers, although she did raise some question as to the genuineness of her signature by reason of the absence of the signature of her husband, William Winters, who she remembered as having signed as a witness before her. Her recollection was, also, that a Mr. Robertson was present at that time along with the proponent Cotignola. Mrs. Winters also testified that the decedent and his then wife were rational and knew what they were doing and affirmed to her that they intended to sign a will.
The petitioner proponent Cotignola, testified that he is an attorney at law having been admitted to the Bar in 1932; that he had known the decedent for some years prior to the preparation of the propounded instrument; that he had prepared the propounded instrument in his own handwriting; that he had prepared it at the instructions of the decedent and his then wife; that he, accompanied by Mr. and Mrs. Watts and a Mr. Oliver Robertson, went from the main camp to the gate house on the premises, to seek an additional witness; that upon entering the gate house Mr. and Mrs. Watts asked Mrs. Winters, Mr. Robertson, and Mr. Cotignola to be subscribing witnesses to the will; that Mr. and Mrs. Watts then signed the propounded instrument, following which Mr. Cotignola read the attestation clause appearing on the propounded instrument and the instrument was signed by Mr. Robertson, Mrs. Winters and himself.
Proof of the death of the witness, Oliver E. Robertson, was then presented to the court.
Following statutory procedures, the petitioner proponent then produced expert testimony to prove the genuineness of the signatures on the propounded instrument and the witness, Ordway Hilton, who was, to the satisfaction of the court, so qualified, testified that, in his opinion, the signatures of the decedent, of the subscribing witness, Helen Winters, and the subscribing witness, Oliver E. Robertson, were made by the same persons who had signed documents with which such signatures were compared and which documents were properly proven to contain specimens of the signatures of such parties. No contrary proof having been produced, this court finds that such signatures were, in fact, genuine.
Under circumstances such as this, the court is mindful of the additional requirement of subdivision 3 of SOPA 1405 requir *624 ing proof of “ such other facts as would be' sufficient to prove the will.” Although no clear cut definition has been given by the courts of this State as to what “ such other facts ” would consist of, it is clear to this court that almost any facts establishing regularity as opposed to mere conjecture would be admissible and would weigh in the determination of this question. The propounded instrument does contain a proper attestation clause. As John L. Goldman says in the Practice Commentary (McKinney’s Cons. Laws of N. Y., Book 58A, SOPA 1405): “The courts have also placed substantial reliance on the existence of a properly worded attestation clause and have held that it is some proof of the due execution of a will. In re Bright’s Estate, 1959, 20 Misc. 2d 789, 189 N. Y. S. 2d 234, affirmed 12 A. D. 2d 745, 210 N. Y. S. 2d 754 appeal denied 13 A. D. 2d 629, 215 N. Y. S. 2d 463; In re Zipkin’s Will, 1956, 3 Misc. 2d 396, 153 N. Y. S. 2d 783. The courts have considered the attestation clause to be prima facie evidence of the facts certified within it, once the signature of the testator and the attesting witnesses have been properly identified and the witnesses have offered some testimony as to the transaction.” In addition to the existence of a proper attestation clause, we have the testimony of the proponent Cotignola, a lawyer of some 40 years’ experience, as to the circumstances surrounding the execution of the instrument, all of such testimony supporting its proper execution. This is supported by the pretrial examination testimony of Mrs. Winters, made a part of the record herein, attesting to her presence with Mr. and Mrs. Watts and Mr. Robertson and Mr. Cotignola, at the time when Mr. and Mrs. Watts had asked her to be a witness to their will and her further recollection that she had signed a paper following the will discussion. The court finds, therefore, that the foregoing constitute “ such other facts as would be sufficient to prove the will.”
The foregoing notwithstanding, however, a substantial question is presented as to whether the propounded instrument is, in fact, testamentary in nature. That the propounded instrument was, at the time of its execution, the last will and testament of the decedent and his then wife, Selma, cannot seriously be doubted. The question is whether it remained the last will and testatment of the decedent until his death.
The provisions of such will, insofar as they may be relevant to such question, are here set forth for the purpose of ready reference:
“We, amandtjs watts and selma watts, husband and wife, residing at Cedarlands Park, Long Lake, R Y. being of sound *625 and disposing minds and memories and aware of the uncertainties of this life, do hereby make, publish and declare, this as our joint, reciprocal and mutually obligatory testament as follows:
“ First: We direct that as soon after our deaths as may be practicable our just debts, funeral and administration expenses be paid.
“ Second: We hereby revoke any and all wills and testamentary dispositions heretofore made by us or either of us.
“ Third: In the event one of us shall predecease the other, the one of us who predeceases the other hereby gives, devises and bequeaths to the survivor all of his or her property real, personal and mixed and wheresoever the same may be situated, his or hers to have and to hold absolutely and forever.
“ Fourth: In the event we shall both die in the same common accident or disaster or under such circumstances that it shall not be possible to determine which of us survived the other, then we hereby direct that our joint and several estates be divided and distributed as follows: * * *
“Fifth: We hereby nominate, constitute and appoint each other as executor under this will and also as co-executor, Lewis F. X. Cotignola, attorney in the City of New York. In the event of our simultaneous devise [sic] we hereby appoint Lewis F. X. Cotignola as our executor and trustee.
“ in witness whereof we have hereunto jointly affixed our hands and seals this 10th day of October, 1953.”
Selma Watts predeceased Amandus Watts by some 11% years. It is clear that paragraph Third of the will set forth.above, was controlling upon her death and whatever estate she had, became vested in fee in Amandus Watts. The alternative disposition appearing in paragraph Fourth would fail since the language used expressly limits such disposition to the simultaneous death situation. It follows then, since Selma Watts died first and Amandus Watts was clearly the survivor, that the propounded instrument, insofar as applicable to the estate of Amandus Watts, contained no dispositive provisions and retained only the usual direction for payment of debts, funeral and administration expenses, and the Fifth paragraph containing the nomination of an executor.
While it is true that a will in which all dispositive provisions have lapsed and, indeed, which does nothing but nominate an executor, may be admitted to probate (Matter of Dorrie, 48 N. Y. S. 2d 841; Matter of Johnson, 169 Misc. 215; Matter of Tankelowitz, 162 Misc. 474), a serious question as to the testamentary nature of the propounded instrument is raised by the *626 language of the propounded instrument itself when read in its entirety.
The propounded instrument, on its face, without any ambiguity, limits the disposition of the several estates of the parties to each other, with the joint and several estates of both to be disposed of according to plan only in the event of the simultaneous death of the parties. Also, the plain language used in paragraph Fifth of the propounded instrument in which the petitioner proponent is named as “co-executor” (thus obviously contemplating the death of only one of the parties) and, continuing, to name the petitioner proponent as sole executor and trustee only in the event of simultaneous death. Nowhere in paragraph Fifth can be found an intent that the nomination of the petitioner proponent would survive the death of Selma Watts and be operative in the estate of Amandus Watts at his subsequent death. The plain intent was that the will of Amandus Watts terminated on the death of Selma as clearly as if it had been revoked.
That such was the plain intent of the parties at the time of the joint execution of the propounded instrument is clearly supported by the testimony of the petitioner proponent.
Q. Mr. Cotignola, you were asked if you were not aware that this propounded instrument contains no survivorship clause, except in case of simultaneous death and you know that; is that correct? A. That’s right.
Q. Mr. Cotignola, did you know that when you drew the instrument? A. Yes.
Q. Will you explain the action of such a provision in that instrument ? A. Yes. It had been discussed between the testators and me and their statement was, “ Well, leave that go until some subsequent time and we’ll give attention to this now. What we want to provide for is in the case of the death of one of us, the other gets the property and in case of our simultaneous death, the will will provide for certain stated people--”, who are related to both Mr. and Mrs. Watts.
Q. Did you ever remind Mr. and Mrs. Watts, either one or both,---
A. I advised--
Q.----of the advisability of making a provision for survivorship, which had not been included in this instrument? A. Taking your question as to reminding Mrs. Watts, I do not recall that I ever reminded her; but as to Mr¿ Watts, on at least one occasion before Mrs. Watt’s death, and on many occasions after she had died, I reminded him or advised him of what I thought was the necessity of preparing a will which would take eare of the situation now that Selma had predeceased him.
Q. What answer did you get? A. I’m taking care of it.
Although the testimony of the petitioner set forth above was received in evidence by way of redirect examination without objection, the testimony of Adam Palmer was objected to by the attorney for the proponent on the grounds that the declarations made to him by the decedent were inadmissible as hear *627 say and that such declarations would be admissible only for the purpose of proving the testator’s state of mind on the question of capacity. This court reserved decision on that objection at the time of trial and now overrules such objection on the grounds that such declaration falls within the exception to the hearsay rule as a declaration against the decedent’s interest. Moreover, Oscar LeRoy Warren in Warren’s Heaton, Surrogates’ Courts of the State of Hew York (6th ed., vol. 7, § 30, par. 1, subd. [b]) points out: ‘ There seems to be a tendency in recent years to be somewhat more liberal in admitting testimony as to declarations. Thus, it has been held that they are admissible for the purpose of showing surrounding circumstances. * * * Likewise, as previously indicated, such evidence may be admitted in cases of ambiguity ”.
In addition, the door was opened to this line of questioning by the redirect examination of the petitioner proponent set forth above.
Such testimony of Adam Palmer was as follows:
‘(Adam R. Palmer — 'Direct)
* * * On October 8, 1965, Amandus Watts came to my office in connection with the sale of a piece of real property to one Walter and Eunice Hartmann, who lived in Rochester, Hew York. Mr. Watts gave me the details as to the sale, the amount of the consideration and the manner in which he wished to receive it.
After he had given me that information, Mr. Watts said to me, in words or substance, “ I do not have a will. I would like you to prepare a will for me.” Mr. Watts had come to my office assisted physically by a man named Winters.
My office is on the ground floor and my desk is in a comer. Anybody talking with me can look out the front window onto the street. At that point, Mr. Watts said, “ There’s my driver. He’s in a hurry to go, so I had better go.” With that, he stood up from the chair and I assisted him and--There is an emergency exit from my office that I commonly use. I opened that because it leads right to the front door. The man came in and took him by the arm and with that, Mr. Watts turned to me and he said, “About the will--Don’t you think I look good enough to last until spring? Because I’m going to Florida very shortly.” Obviously, I said, “ You certainly do.”
The next time I saw Mr. Watts was in my office on April 25,1966 and he had come there to sign a corrected deed to some people named Kanetsky, who live in Schenectady, Hew York. The surveyor who had prepared the description had made a mistake on one course and that was the reason for the corrected deed.
At that point I brought up the question of the will. He said to me, “ I do not have a will and as I told you last year, Iwant you to do one for me and I will call you about it.” I never saw him after that prior to his death.’
Albeit questions of construction should be determined subsequent to the admission to probate of an instrument propounded as a last will and testament (Matter of Davis, 182 N. Y. 468), an instrument which is not testamentary in character will not be admitted to probate even though it has been regularly executed *628 with the formalities required by statute. (SCPA 1408; Matter of May, 241 N. Y. 1.) As was said by Judge Froessel in writing for the court in Matter of Pascal (209 N. Y. 108,114): ‘ ‘ We think the Surrogate was correct in stating that the question of the effect of the alleged condition upon the validity of the will, as to which we express no opinion, should be determined on the trial of the probate, or subsequently, in accordance with section 145 of the Surrogate’s Court Act (see Matter of Smith, 254 N. Y. 283, 289-290).”
This court finds that the plain intent of Amandus Watts, as expressed in the propounded instrument itself, was to protect his first wife, Selma, in the event that he should die first and to make a final testamentary disposition of his estate only in that event or in the event of the simultaneous death of him and his then wife. The instrument offered for probate is, therefore, clearly conditional and ceased to be the last will and testament of Amandus Watts upon the death of his first wife, Selma.
Matter of Johnston (186 Misc. 533, 535) is distinguishable since the simultaneous death provision contained the additional language “ or the death of one of us and the death of the survivor before the due legal probate of this last will amd testament has been accepted ”. (Emphasis added.)
The petition of Lewis F. X. Cotignola for probate of the instrument purported to be the last will and testament of Amandus Watts is, therefore, dismissed.
The petitioner, Louise Lieber, having been determined to be the widow of the decedent and thus having prior right to the issuance of letters of administration, the petition of William Wells, a brother of the decedent, is hereby dismissed, and the petition of Louise Lieber for letters of administration is hereby granted.