OPINION OF THE COURT
George W. Marthen, S.
This “landmark case in the history of the Surrogate’s Court of the County of Hamilton” (see Matter of Watts, 71 Misc 2d 621) appears to be grinding to a conclusion, but not without further complications. After many years of litigation of issues such as the marital status of the decedent — it now appears from the administrators’ petition for judicial settlement of the final accounts, that the decedent, many years ago in Sweden, fathered two children born out of wedlock who now might be entitled to adjudication of this court as the decedent’s sole distributees.
. The petitioners herein, in addition to seeking judicial settlement of their accounts, have asked that this court “determine the identity of persons who are distributees of the decedent entitled to share in his estate and that the court determine that the surviving illegitimate son of the decedent and the illegitimate grandchildren of the decedent are not distributees of the decedent entitled to share in his estate”.
*36 Upon the return of 'Station herein, with no appearance by or on behalf of the Swedish domicilliaries upon whom citation had been served, this court, upon its own motion, determined that sufficient reason appeared to require that supplemental citation issue and be served upon the Swedish Consul General in New York City.
The Swedish Consul General in New York has now appeared as attorney in fact of the so-called “illegitimate” issue of the decedent and proofs were taken by the court.
From the petition with exhibits annexed and other papers filed herein it appears, beyond peradventure, that the decedent fathered two children, born of the same mother, in Sweden prior to his immigration to the United States in 1927. They were Elis Gustaf Amandus Watz, born October 31, 1911, and Tor Engelbert Watz, born April 10, 1914. It also appears beyond question that the decedent was never married to the mother of his said sons.
The birth certificate of each of said sons named the decedent as the father and contained a statement that the decedent “admitted to being the child’s father”.
The younger of said sons, Tor Engelbert, predeceased the decedent leaving him surviving two children, a son, Enge Tore Watz, and a daughter, Anita Marie-Louise Watz Edstrom, both residents of Sweden. Since the filing of the petition herein, the older son of the decedent, Elis Gustaf Amandus, has also died in Sweden and his interest is represented by the administrator of his estate, Arne Liljeros.
The sole question presented at this time is whether the sons of the decedent born out of wedlock are entitled to the legitimatizing effect of EPTL 4-1.2, thus permitting their issue to inherit this estate.
The decedent, father of the illegitimate children named herein, died a resident of Hamilton County on June 14, 1966. Just three and one-half months earlier and on the 1st of March, 1966, section 83-a of the Decedent Estate Law took effect and paragraphs b and c of subdivision 1 read as follows:
“b. An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if *37 a court of competent jurisdiction shall have found the decedent to be the father of such child and shall have made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
“c. The approval of any agreement or compromise without the making of an order of filiation declaring paternity shall not enable the child to inherit from the respondent in any such proceeding.”
Subsequently section 83-a of the Decedent Estate Law became EPTL 4-1.2.
Although this court must apply the law as it existed at the time of decedent’s death, this court cannot completely disregard the statutory changes in the rights of illegitimates to inherit which have resulted in the present provisions of EPTL 4-1.2 as last amended by section 1 of chapter 139 of the Laws of 1979, particularly in arriving at a just result within the clear and explicit intent of the legislation.
As was so succinctly stated by Surrogate GELFAND in Matter of Harris (98 Misc 2d 766, 768):
“The prohibition against the judiciary legislating dictates that ordinarily the courts give literal effect to unambiguous language (Meltzer v Koenigsberg, 302 NY 523, 525; Lawrence Constr. Corp. v State of New York, 293 NY 634). However, an overriding cardinal rule is that in applying statutes the court must effectuate the purpose and intent of the legislation. To carry out this function the courts have latitude in not blindly adhering to the literal language of a statute if such language fails to express the clear overriding purpose of the legislation (Abood v Hospital Ambulance Serv., 30 NY2d 295, 298, and cases cited therein; Matter of Hogan v Culkin, 18 NY2d 330, 335, and cases cited therein).
“The legislative purpose in enacting EPTL 4-1.2 is both clear and explicit. It was enacted ‘to grant to illegitimates in so far as practicable rights of inheritance on a par with those enjoyed by legitimate children while protecting innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as file *38 gitimate heirs.’ (Fourth Report of Temporary State Comm on Modernization, Revision and Simplification of Law of Estates, NY Legis Doc, 1965, No. 1.8A, p 265.)”
In the case at hand the children of decedent were born in a foreign nation, Sweden, where both their mother and father, the decedent herein, were domiciled. While there is no doubt that the law of the decedent’s domicile at the time of death governs the intestate distribution of his estate, there is equally no doubt that the personal status of a child is dependent upon the law of the place where such child was born. (Miller v Miller, 91 NY 315; Olmsted v Olmsted, 190 NY 458, affd 216 US 386; Matter of Ortiz, 86 Misc 2d 790; Matter of Sherman, 76 Misc 2d 551; Matter of Ortiz, 60 Misc 2d 756.)
In Matter of Ortiz (60 Misc 2d, 756, 764, supra), Surrogate Sobel in setting forth a three-point test to be applied in recognizing as a matter of comity the laws of other jurisdictions, stated:
“The question is to what extent, in view of the great advancement made in all States for the protection of illegitimates, New York is willing to recognize legitimation statutes which are different from ours? Our statute (EPTL 4-1.2) confers the status of legitimate upon the illegitimate child of the father only if a formal order of filiation declaring paternity is made within, two years from birth. But nothing in our public policy should prevent our recognizing as a matter of comity different statutes of other States. As a legal matter, as well as a practical matter, we should be willing to recognize and give effect to the personal law of the child deriving from another jurisdiction. We should make three requirements:
“1. That the jurisdiction be the domicile of both the child and the putative father at the time of legitimation; and
“2. That the legitimation be effected either by an adversary proceeding or by the affirmative formal acknowledgment of paternity by the putative father; and
“3. That we will recognize statutes conferring status or ‘all rights’ or the ‘same rights’ as legitimates; and as *39 well statutes conferring particular rights, such as for example the right to inherit, or to share in a wrongful death action if that particular right is the one at issue in the forum State.
“It may well be that an illegitimate of a foreign jurisdiction may become entitled to greater benefits than a New York illegitimate under the same circumstances. This is, however, so in other areas of conflict jurisprudence.”
Under Swedish law the Royal Decree of December 23, 1910, which replaced the Law of 1894, with respect to-recording the acknowledgment of parentage by the father of an illegitimate child in the Parish Book of Birth and Baptismal Records, provides: “There is to be no entry of the father of an illegitimate child unless he has consented to the vicar to be recorded as the father of the child or is adjudicated the father in a final decree of a court”.
How similar to our present statutory requirements and yet almost three quarters of a century earlier in times.
The Swedish birth records of each of the decedent’s illegitimate children names the decedent as the father and contains the further statement that the decedent “admitted” or “acknowledged” (depending apparently on translation) himself to be the father. These children were also recognized as heirs of the decedent’s brother, Uno Einar Alexander Watz, in the Ljusdal District Court in Sweden in February, 1975.
Brigitta Sabelstrom, consul for legal matters at the Swedish Consulate General in New York City, who is an attorney qualified to practice before the courts in the Kingdom of Sweden and a former assistant Judge of the District Court of Gotland, testified that under Swedish law acknowledgment of the father of children born out of wedlock is equivalent for all purposes to adjudication of paternity by a court and “that such child has all the rights of a legitimate child with regards to his parents, in every respect, including rights to estates left by the parents”.
This court concludes, therefore, that Elis Gustaf Amandus Watz and Tor Engelbert Watz are entitled to the legitimatizing effect of former section 83-a of the Decedent Estate *40 Law and that the children of Tor Engelbert, who predeceased the decedent, are entitled to one-fourth share each in the net estate and that the representative of the estate of Elis Gustaf Amandus, who died since the start of this proceeding, is entitled to one half of the net estate. (EPTL 4-1.1; Matter of Ortiz, 60 Misc 2d 756, supra; cf. Matter of Lalli, 43 NY2d 65.)