OPINION OF THE COURT
Bertram R. Gelfand, J.
In this accounting proceeding, alleged siblings and issue of a predeceased sibling filed objections to the account of the Public Administrator in which they contended that the entire estate should be distributed to them as decedent’s distributees. A kinship hearing was held. The proof adduced established that objectants were related to the decedent as alleged. However, the proof also indicated that decedent may have been survived by a nonmarital son in his native Germany and that a court in that jurisdiction had adjudicated him to be the father of this child with a direction to make support payments. At that juncture, the nonmarital child had not been made a party to the proceeding. Upon this state of the record, the Public Administrator was directed to make a diligent effort to locate his where *1066 abouts and join him in the proceeding (see Matter of Luber, NYLJ, July 1, 1980, p 11, col 1).
The efforts of the Public Administrator, to locate the nonmarital son proved successful. His attorney in fact interposed objections on his behalf contending that he is decedent’s sole distributee. A responsive pleading to these objections was filed by the earlier objectants. Presently before the court is a motion by the original objectants to dismiss the objections filed by the alleged nonmarital child. They contend that even if he can establish the facts alleged in opposition to this motion, that as a matter of law he is not a distributee of decedent.
Solely for the limited purpose of the instant motion, the essential facts relative to this nonmarital son are viewed as not in dispute. Decedent fathered objectant Johann Róesele in Germany prior to his emigration to the United States. Decedent was never married to the mother of Johann Róesele. Shortly after the child’s birth, decedent left Germany and arrived in New York where he remained domiciled until his death on January 14, 1979. There has been submitted a copy of the birth certificate of Johann Róesele, issued on February 23,1920, showing that a child by the name of Johann was born on February 18, 1920 to Sophie Róesele of Dachau, Germany. The certificate also bears a marginal entry indicating as follows:
“Dachau, March 24,1920. Pursuant to the protocol of the District Court Dachau of March 23, 1920, Johann Luber of Dachau, single, carpenter, acknowledged paternity to the within described child of Sophie Róesele.
“The registrar:
“Signature”
Initially submitted in support of the motion was a copy of a certificate of the District Court of Dachau, dated May 15, 1944, which reads as follows:
“The District Court
“File # VII 66/1920 Dachau, May 15, 1944
“certification
“Johann Luber, carpenter, born on December 9,1898, in Doerlbach near Nuremberg, has acknowledged paternity *1067 of the illegitimate child Johann Róesele of Dachau on February 18, 1920.”
Originally, the District Court in Dachau, Department of Guardian Matters, indicated that it could not locate the original of the protocol of March 23,1920 referred to on the aforesaid birth certificate. However, this protocol has now been located and a copy of it is before the court. It does not appear to be in dispute that the Johann Luber mentioned on these papers is decedent John Luber. It is movant’s contention that notwithstanding the import of these documents relative to the paternity of Johann Róesele, he is still not a distributee of decedent.
The application of the controlling New York statute requires consideration of German law. The issue to be determined which requires the application of German, as well as New York law, is whether the events which occurred in Germany entitle the nonmarital child to inherit pursuant to the provisions of EPTL 4-1.2 (subd [a], par [2]). This statute has been amended since the date of decedent’s death on January 14,1979 (L 1979, ch 139, § 1, eff May 29, 1979; see, also, L 1981, ch 75, eff Sept. 1, 1981). However, it must be applied in the form it existed on the date of decedent’s death, since on that date, all rights of inheritance by intestacy vested in those enjoying these rights (Matter of Rodriguez, 100 Misc 2d 983, 987).
EPTL 4-1.2 (subd [a], par [2]) on the date of decedent’s death provided that a nonmarital child can inherit from his father if “a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years of the birth of the child”. No necessity exists in this matter to explore the possible constitutional infirmity of the two-year limitation stated in the statute since all of the critical proceedings relative to paternity here occurred within two years of the birth of the alleged nonmarital child.
The family status of a child is dependent upon the place where the child was born (Miller v Miller, 91 NY 315; Olmsted v Olmsted, 190 NY 458, affd 216 US 386; Robles v Folsom, 239 F2d 562; Perez v Gardner, 277 F Supp 985; *1068 Matter of Watts, 106 Misc 2d 35; Matter of Baker, 105 Misc 2d 365; (Matter of Ortiz, 86 Misc 2d 790; Matter of Sherman, 76 Misc 2d 551; Matter of Ortiz, 60 Misc 2d 756; Matter of Slater, 195 Misc 713; Matter of Vincent, 189 Misc 489; Matter of Bruington, 160 Misc 34; Matter of Krabbe, 158 NYS2d 551). Accordingly, under the principles of comity, New York has conferred the inheritance rights set forth in EPTL 4-1.2 upon nonmarital children born in other jurisdictions where certain basic criteria were found to be present. Essentially, the elements which the prior cases required to grant foreign nonmarital children the right to inherit in New York from or through their fathers are that the father was a domiciliary of the jurisdiction where the finding of paternity was made at the time of the child’s birth; that the finding under the laws of that jurisdiction was the product of an adversary proceeding or, in the alternative, of an affirmative formal acknowledgment of paternity; and that the statutes of such jurisdiction conferred upon the nonmarital child all of the rights of a legitimate, or that they at least conferred upon the child the right to inherit from the father (Matter of Watts, supra, at p 38; Matter of Ortiz, supra, at p 764).
The last characteristic of the above-cited decisions is not present in the instant case. Although at the time there existed under German law procedures which would have given a nonmarital child the right to inherit, these procedures were not the ones which were followed. The German proceedings in this matter were pursuant to a law designed to establish paternity solely for the purpose of support. To achieve the status of either a legitimate, or an illegitimate with the right to inherit, it would have been necessary to pursue a different remedy than the one that was followed. The proceeding that occurred was pursuant to sections 1708 through 1716 of the German Civil Code. In order for the nonmarital objectant to be given a right of inheritance from his father it would have been necessary to proceed instead under sections 1723 through 1740 of the German Civil Code. Objectant nonmarital child’s reliance on the fact that the German statutes were amended in 1970 so that under the provisions of section 1600 et seq. of the German Civil Code, objectant nonmarital child would en *1069 joy a right of inheritance under German law, is misplaced. It is questionable, whether this jurisdiction should apply the principles of comity to a foreign inheritance statute which is given retroactive application. Secondly, even if applied, it appears that the provisions respondent relies upon are not applicable to any child born prior to July 1, 1949.
However, the proceeding which resulted in the entry by the German court of the 1920 protocol clearly indicates that decedent appeared in that proceeding, acknowledged paternity of respondent Johann Róesele, and thereby became obligated to support his child to the age of 16 (see German Civil Code, §§ 1708-1716). Accordingly, the narrow issue presented is whether procedures in a foreign jurisdiction which do not result in that child being either legitimate, or being afforded any inheritance rights from the father in that jurisdiction, nevertheless can constitute an order of filiation declaring paternity by a court of competent jurisdiction that meets the requirements of EPTL 4-1.2. This appears to be a question of first impression. None of the cases presented by the parties, nor the court’s own research has uncovered any case precisely in point. As noted, in all of the cited cases, the procedures in the foreign jurisdiction either made the nonmarital child a legitimate, or at least an heir, under the foreign law.
Clearly, when applying the law of a foreign jurisdiction in an effort to ascertain if a nonmarital child falls within EPTL 4-1.2, it is impossible to find foreign statutes and procedures which are exact replicas of the laws of New York. The search must be one to ascertain if the acts in the foreign jurisdiction, in compliance with its laws and procedures, are the reasonable equivalent of a course of conduct in New York which would make a nonmarital child a distributee of his father pursuant to EPTL 4-1.2.
The legislative intent in enacting EPTL 4-1.2 is “to grant to illegitimates in so far as practicable rights of inheritance on a par with those enjoyed by legitimate children while protecting innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harrassing litigation instituted by those seeking to establish themselves as illegitimate heirs.” (Fourth *1070 Report of Temporary State Comm on Modernization, Revision & Simplification of Law of Estates, NY Legis Doc, 1965, No. 19, Report No 1.8A, p 265; emphasis added; see, also, Matter of Harris, 98 Misc 2d 766.) The case law on this subject reveals that the expressed intent of the Legislature of this State has been supplemented by a consistent pattern of judicial action in favor of the rights of children born out of wedlock by holding other procedures to be the equivalent of filiation proceedings when they result in establishing with certainty, in a context where the father had an opportunity to be heard, the relationship to the now deceased father (Matter of Harris, supra, at pp 769-770, and cases cited therein).
The United States Supreme Court in upholding the constitutionality of EPTL 4-1.2 noted the liberal interpretation of the statute by the courts of New York in favor of out-of-wedlock children (Lalli v Lalli, 439 US 259, 271-272). Moreover, it is noted that the Legislature has recently embraced the consistent pattern of liberal interpretations afforded to the statute, by enacting an amendment to EPTL 4-1.2 which further liberalizes its provisions in favor of nonmarital children (L 1981, ch 75). Lastly, the Bennett Commission in its report in support of the passage of the statute which is at issue in this case stated “that formal acknowledgements made in foreign jurisdictions that meet the requirements set forth in this report for a valid acknowledgement in New York be recognized as valid in this State” (Fourth Report of Temporary State Comm on Modernization, Revision & Simplification of Law of Estates, 1965, p 241).
It is appropriate to give weight to the liberal interpretations that have been afforded to EPTL 4-1.2 in furtherance of the aforesaid quoted purpose of the statute to “grant to illegitimates in so far as practicable rights of inheritance on a par with those enjoyed by legitimate children” (Fourth Report of Temporary State Comm on Modernization, Revision & Simplification of Law of Estates, 1965, p 265) in determining whether the procedures utilized in the instant case fall within the broad ambit of the statutory criteria which the Legislature has established to insure that non-marital issue claiming a paternal relationship to a dece *1071 dent are in fact so related, and not just persons who after a decedent’s death appear for the first time in a belated attempt to establish status in the suspicious context of a proceeding related solely to the issue of inheritance.
In the instant case, on March 23,1920, the District Court for Dachau, Germany, rendered a “protocol” whose form appears to be the equivalent of a judgment, indicating decedent’s participation in the proceeding and his acknowledgment that he was the father of objectant Johann Róesele. In accordance with German law, this determination was timely sent to the registrar’s office where the birth was recorded as is confirmed by the notation to that effect on said objectant’s birth certificate. It is concluded that the failure of the foreign law to either make the nonmarital child legitimate or an heir is not necessarily fatal to bringing the child within the intent of EPTL 4-1.2. This statute plainly provides that the nonmarital children of New York domiciliarles are entitled to inherit from their fathers when a court of competent jurisdiction has made a finding of paternity. The 1920 protocol here presented falls within the ambit of a court of competent jurisdiction having entered an order of filiation declaring paternity in the context of an adversary proceeding. This is enough to entitle respondent to inherit pursuant to EPTL 4-1.2, provided that he can duly establish at a hearing those facts which have been accepted for the purpose of determining the questions of law presented by this motion.
The matter is set down for a hearing on September 9, 1981, at 9:30 a.m.